# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| INSULATE SB, INC., a California Corp., individually and on behalf of all others similarly situated, <br><br> *Plaintiff,* <br> v. <br><br> ABRASIVE PRODUCTS & EQUIPMENT, *et al.* <br><br> *Defendants.* | Case No. 1:13–cv–01609–YK <br><br> (Chief Judge Yvette Kane) <br><br> **ORAL ARGUMENT REQUESTED** <br><br><br> <u>Filed Electronically</u> |

### Memorandum of Law in Support of
### Graco Inc. and Graco Minnesota Inc.'s Motion Under 28 U.S.C. § 1404(a)
### <u>to Transfer Venue to the Federal District of Minnesota</u>

# TABLE OF CONTENTS

<u>Page</u>

INTRODUCTION ...............................................................................1

PROCEDURAL HISTORY .................................................................2

STATEMENT OF FACTS....................................................................2

    A.    The Parties ................................................................2

        1.    Insulate SB, Inc. ...........................................2

        2.    Graco ...........................................................3

        3.    Distributor Defendants.................................3

    B.    Complaint and Location of Material Events ...............5

    C.    Location of Relevant Witnesses and Documents .......7

STATEMENT OF QUESTION INVOLVED.......................................9

ARGUMENT.......................................................................................9

    I.    This Action Might Have Been Brought in the District of Minnesota.................................................................10

    II.    The Private Interest Factors Unequivocally Favor Transfer to the District of Minnesota..........................11

    III.    The Public Interest Factors Unequivocally Favor Transfer to the District of Minnesota..........................16

CONCLUSION ..................................................................................22

# TABLE OF AUTHORITIES

Page

*Cases*

*Baldston v. Medtronic Sofamor Danek, Inc.,*
    152 F. Supp. 2d 772 (E.D. Pa. 2001)........................................................ 20

*Berndt v. Deloitte & Touche LLP,*
    No. 12-cv-2157, 2012 U.S. Dist. LEXIS 103422
    (E.D. Pa. July 25, 2012) ........................................................................ 12

*Carson v. Flexible Foam Prods., Inc.,*
    No. 08-cv-095-bbc, 2008 U.S. Dist. LEXIS 34336
    (W.D. Wis. Apr. 23, 2008)..................................................................... 12

*Coppola v. Ferrellgas, Inc.,*
    250 F.R.D. 195, 198 (E.D. Pa. 2008)........................................................ 12

*Cumberland Truck Equip. Co. v. Detroit Diesel Corp.,*
    401 F. Supp. 2d 415 (E.D. Pa. 2005).................................... 10, 11, 18, 19

*Days Inn Worldwide, Inc. v. Inv. Props. of Brooklyn Ctr.,*
    No. 08-390, 2009 U.S. Dist. LEXIS 88710
    (D.N.J. Sept. 25, 2009) ......................................................................... 19

*Ebid v. Global Futures & Forex, Ltd.,*
    No. 10-cv-4372, 2010 U.S. Dist. LEXIS 123596
    (D.N. J. Nov. 22, 2010) ........................................................................ 19

*Ellis v. Marriott Int'l, Inc.,*
    No. 3:11-cv-329, 2011 U.S. Dist. LEXIS 145417
    (M.D. Pa. Dec. 19, 2011) .................................................................. 15, 16

*Hamilton v. Nochimson,*
    No. 09-cv-2196, 2009 U.S. Dist. LEXIS 62644
    (E.D. Pa. July 21, 2009) .............................................................. 13, 19, 21

# TABLE OF AUTHORITIES (cont'd)

Page

*Cases (cont'd)*

*High River Ltd. P'ship v. Mylan Labs., Inc.,*
　　353 F. Supp. 2d 487 (M.D. Pa. 2005) ......................................9, 10, 13, 16

*Howard Hess Dental Labs, Inc. v. Dentsply Int'l, Inc.,*
　　516 F. Supp. 2d 324 (D. Del. 2007) ........................................................18

*In re Auto. Refinishing Paint Antitrust Litig.,*
　　358 F.3d 288 (3d Cir. 2004) ....................................................................18

*In re Auto. Refinishing Paint Antitrust Litig.,*
　　No. 1426, 2002 U.S. Dist. LEXIS 15099
　　(E.D. Pa. July 31, 2002) ..........................................................................18

*In re Toll Processing Servs.,*
　　No. 2:12-00928, 2012 U.S. Dist. LEXIS 177945
　　(W.D. Pa. Dec. 17, 2012) ........................................................................17

*J. McIntrye Mach., Ltd. v. Nicastro,*
　　131 S. Ct. 2780 (2011) ............................................................................17

*Johnson v. Nextel Commc'ns, Inc.,*
　　No. 06-CV-5547, 2007 U.S. Dist. LEXIS 70926
　　(D.N.J. Sept. 21, 2007) ...........................................................................20

*Jumara v. State Farm Ins. Co.,*
　　55 F.3d 873 (3d Cir. 1995).............................................................10, 11, 17

*Meritain Health, Inc., v. Express Scripts, Inc.,*
　　No. 12-129, 2012 U.S. Dist. LEXIS 17682
　　(E.D. Pa. Feb. 13, 2012) ..........................................................................15

# TABLE OF AUTHORITIES (cont'd)

<u>Page</u>

**Cases (cont'd)**

*Meyers v. Heffernan,*
    No. 10-212-MPT, 2012 U.S. Dist. LEXIS 56033
    (D. Del. Mar. 29, 2012) ............................................................... 21

*Nilssen v. Everbrite, Inc.,*
    No. 00-189, 2001 U.S. Dist. LEXIS 25568
    (D. Del. Feb. 16, 2001) ............................................................... 14

*Stewart Org., Inc. v. Ricoh Corp.,*
    487 U.S. 22 (1988) ....................................................................... 9

*WellPet LLC v. Midwestern Pet Foods, Inc.,*
    No. 1:09-cv-1556, 2009 U.S. Dist. LEXIS 117141
    (M.D. Pa. Dec. 16, 2009) ........................................................11-12, 13, 14

**Statutes**

Sherman Act, 15 U.S.C. §§ 1, 2 (2012) ................................................... 5

Clayton Act, 15 U.S.C. §§ 14, 18 (2012) ............................................... 5

Clayton Act, 15 U.S.C. § 22 (2012) ....................................................... 18

28 U.S.C. § 1404(a) (2012) ................................................... 2, 9, 10, 16

**Other Authorities**

ABA SECTION OF ANTITRUST LAW, *State Antitrust*
    *Practice & Statutes* §§ 41-1, 41-17 (3d ed. 2004) ...................................... 20

## INTRODUCTION

Defendants Graco Inc. and Graco Minnesota Inc. ("Graco") are affiliated Minnesota companies that manufacture fast-set spray foam equipment ("FSE"). This equipment is used to apply foam building insulation and is sold by independent distributors to building contractors and other end users around the United States. This case is a putative antitrust class action brought by Plaintiff California building contractor, Insulate SB, Inc., on behalf of an alleged nationwide class of FSE purchasers. Plaintiff alleges that Graco and 32 alleged FSE distributors conspired to monopolize, exclude competition, fix prices, and allocate markets in the building insulation market.

In particular, Plaintiff focuses on Graco's 2005 and 2008 acquisitions of FSE competitors Gusmer Corp. and GlasCraft, Inc., as well as Graco's contemporaneous agreements with its distributors and Graco's business decisions in marketing, pricing, and developing FSE products. The transactions, agreements, and business conduct at issue were centered in Minnesota—at Graco's corporate headquarters—along with the vast majority of Graco personnel and documents involved. Plaintiff's chosen forum, by contrast, is not its home, nor is it the home of Graco or the other Distributor Defendants (save one), nor is it where the witnesses involved in the alleged "conspiracies" reside. And, since most of the other Defendants do not appear to have *any* contacts with this District, it is unlikely that

1

personal jurisdiction and proper venue over those Defendants even exist in this District, as they would in the District of Minnesota.

Graco therefore respectfully moves this Court under 28 U.S.C. § 1404(a) to transfer this case to the District of Minnesota as a matter of convenience and justice. A transfer is warranted because Minnesota is where the material events underlying this dispute occurred: in short, the contracts and business decisions at issue in the Complaint were made in Minnesota, not in the Middle District of Pennsylvania. Minnesota is also where the witnesses and documents most relevant to Plaintiff's claims are located. Hence, significant private and public interests conclusively favor transfer of this case to the District of Minnesota.

## PROCEDURAL HISTORY

On June 14, 2013, Plaintiff filed this action against Graco and 32 other named defendants. (Dkt. 1.) Graco's response to the Complaint is due on August 29, 2013. (Dkt. 23.)

## STATEMENT OF FACTS

**A.    The Parties**

*Insulate SB, Inc.* Plaintiff describes itself as a "fast-set contractor that is incorporated in the State of California." (Compl. ¶ 20.) Plaintiff appears to operate in Santa Barbara, California. (*See* Subbaraman Decl., Ex. A.) Plaintiff alleges that it purchased Graco FSE from a Phoenix, Arizona distributor, Defendant Intech Equipment & Supply (Compl. ¶¶ 20, 41), but does not allege having made any FSE purchases in Pennsylvania. Plaintiff

seeks to represent "all entities and individuals in the United States who purchased fast-set equipment manufactured by Graco for end use and not for resale from Graco or one of its Distributors during the period commencing February 1, 2005 [the "Class Period"]." (*Id.* ¶ 187.)

*Graco.* Incorporated and headquartered in Minnesota, Graco manufactures FSE used "for the installation of foam insulation in residential and commercial buildings." (Compl. ¶¶ 4, 38.) Graco sells its FSE to third-party distributors around the United States. (Sheahan Decl. ¶ 3.) But Graco does not have any Pennsylvania employees involved in selling spray foam equipment, nor does Graco have any facilities, bank accounts, or other assets located in Pennsylvania. (*Id.* ¶ 4.)

*Distributor Defendants.* In addition to Graco (the principal defendant in this case), Plaintiff has sued 32 alleged[1] FSE distributors (including an individual former employee) headquartered in twenty different states. Listed below are the state of incorporation and principal place of business ("PPB") that Plaintiff provides for each alleged Distributor Defendant:

| Alleged Distributor Defendant | Incorp. | PPB |
|---|---|---|
| Abrasive Products & Equipment | DE | LA |
| Advanced Finishing Systems, Inc. | OR | OR |
| Air Power, Inc. | NC | NC |
| Airtech Spray Systems | TX | TX |

[1] "Alleged" because Plaintiff appears to have improperly named a number of defendants. (*See, e.g.*, Dkt. 28 (Defendant Carolina Equipment not a Graco FSE distributor); Dkt. 47 at 1 n.1 (Defendant North Carolina Foam Industries is a "trade name," not a separate legal entity).)

| Alleged Distributor Defendant | Incorp. | PPB |
|---|---|---|
| Barnhardt Manufacturing Co. | NC | NC |
| Carolina Equipment & Supply Co. | SC | SC |
| C.H. Reed, Inc. | PA | PA |
| C.J. Spray Inc. | MN | MN |
| Clemtex Inc. | TX | TX |
| Coast Industrial Systems, Inc. | CA | CA |
| Coatings Holdings Ltd. | WI | WI |
| Corrosion Specialties, Inc. | GA | GA |
| Demilec (USA), LLC | TX | TX |
| Dove Equipment Co., Inc. | IL | IL |
| EnDiSys Fluid Delivery Systems | MN | MN |
| F&S Equipment and Supplies, Inc. | AL | AL |
| Golden State Paint Corp. | CA | CA |
| Hydraflow Equipment Co. | MO | MO |
| Jack DeMita [person] | OH Resident ||
| Intech Equipment & Supply LLC | AZ | AZ |
| Marco Group International, Inc. | DE | IA |
| MCC Equipment & Service Ctr. | IN | IN |
| Midway Industrial Supply | WI | MN |
| North Carolina Foam Industries | NC | NC |
| Specialty Products, Inc. | WA | WA |
| Spray Foam Nation | NY | CT |
| Spray Foam Systems, LLC | GA | GA |
| Spray Pump, Inc. | TX | TX |
| Spray-Quip, Inc. | TX | TX |
| The Paint Project | MA | MA |
| Ultimate Linings, Ltd. | TX | TX |
| Urethane Supply Co. | AL | AL |

(Compl. ¶¶ 21-52.) Only one of the alleged FSE distributors is incorporated or headquartered in Pennsylvania. (Compl. ¶ 27.) Plaintiff makes no claim that any of the other Distributor Defendants have any contacts with this District or even within Pennsylvania.

**B.    Complaint and Location of Material Events**

The Complaint asserts antitrust claims for vertical price fixing, monopolization, exclusionary dealing, and unlawful acquisitions under Sections 1 and 2 of the Sherman Act, 15 U.S.C. § 1, 2, and Sections 3 and 7 of the Clayton Act, 15 U.S.C. § 14, 18, and Minnesota's and other States' antitrust laws (but not under Pennsylvania law). (Compl. ¶¶ 198-283.) Plaintiff alleges that Graco's acquisition of FSE manufacturers Gusmer and GlasCraft in 2005 and 2008, respectively, established an unlawful monopoly in the alleged "FSE market." (*Id.* ¶¶ 92-98). This, in turn, allegedly resulted in higher prices and reduced choice for the distributors' customers (*id.* ¶¶ 157-70) and was immediately followed by various alleged conspiracies between Graco and its distributors to stifle competition from other FSE manufacturers through distributor agreements that allegedly restrained their ability to carry competing products. (*Id.* ¶¶ 99-147.)

Plaintiff contends that Graco orchestrated "multiple conspiracies," through Graco's distribution agreements and relationships with distributors, including: (1) "a hub-and-spoke conspiracy with Graco as the monopolist hub and with the agreements between Graco and its Distributors maintaining the spokes" to exclusively deal with Graco for FSE; (2) numerous discrete conspiracies, whereby "each of the exclusive agreements between Graco and each of its Distributors constitutes an individual conspiracy"; and (3) an alleged vertical price-fixing and market-allocation agreement between Graco and the distributors. (*Id.* ¶¶ 171, 199,

206, 223-225.) All of these allegations share an inevitable focus on Minnesota—the geographic "hub" of the case. (*Id.* ¶ 171.)

Graco negotiated its 2005 and 2008 acquisitions of Gusmer and GlasCraft from its headquarters in Minneapolis, Minnesota. (Sheahan Decl. ¶ 11.) A substantial amount of the due diligence on both acquisitions was also performed at Graco's Minneapolis headquarters, where Graco's Minnesota-based personnel reviewed electronically exchanged information. (*Id.* ¶ 10.) Graco's decisions regarding the integration of acquired Gusmer and GlasCraft assets—of which Plaintiff also complains (Compl. ¶¶ 151-61)— were also made at Graco's Minneapolis headquarters by Minnesota-based Graco personnel. (Sheahan Decl. ¶ 12.) In short, neither the negotiation, nor the due diligence, nor the final integration of these acquisitions occurred in Pennsylvania, and Plaintiff does not—and cannot—allege otherwise.

Plaintiff's conspiracy allegations also concern distribution agreements and business relationships between Graco and its third-party distributors. Graco's distribution agreements—with provisions stating that Minnesota law controls—are negotiated and executed in Minnesota, with each distributor providing their signatures to Graco either by facsimile or through a protected website administered in Minnesota. (White Decl. ¶ 6.) Graco manufactures its FSE products in Minnesota and South Dakota, and then ships those products from Minnesota, F.O.B. Minneapolis, which

means that title, the risk of loss, and responsibility for freight charges is passed on to the distributor in Minnesota. (*Id.* ¶¶ 3, 6.)

Graco's business relationships with these distributors are managed by Graco's High-Performance Coatings and Foam Sales and Marketing Group at the company's Minneapolis headquarters. (*Id.* ¶ 7.) Moreover, the Graco letters to its distributors alleged in the Complaint (*e.g.*, Compl. ¶ 115) —letters that address attempts by former Gusmer executives to use a competing business to exploit trade secrets, goodwill, and relationships that Graco acquired in the Gusmer acquisition—were issued by Minnesota-based Graco personnel. (Sheahan Decl. ¶ 19.) Graco's business decisions regarding marketing, pricing, and product development were also made at Graco's Minneapolis headquarters. (*Id.* ¶ 17.)

The Complaint does not identify any material events that occurred in Pennsylvania.

**C.    Location of Relevant Witnesses and Documents**

Graco is not aware of any witnesses involved in the Gusmer or GlasCraft acquisitions, Graco's contractual and business relationships with FSE distributors, or Graco's decisions regarding pricing, marketing, or product development for Graco FSE products who reside in Pennsylvania. Nearly all of the Graco personnel involved in the Gusmer and GlasCraft acquisitions are located in Minnesota, and worked out of Graco's Minneapolis headquarters. (Sheahan Decl. ¶¶ 9-15.) The vast majority of other personnel that Graco has identified to date as having pertinent

knowledge regarding this dispute—including knowledge of Graco's contracts and relationships with FSE distributors, and Graco's business planning, marketing, pricing, discounting, and competition—are also located in Minnesota. (*Id.* ¶¶ 17-19; White Decl. ¶¶ 6-7 .)

Additionally, Graco has identified, to date, at least five former (non-party) employees who have relevant information regarding the events that concern this action. (Sheahan Decl. ¶¶ 13-15.) For instance, Fred Sutter was the Vice President of Graco's Applied Fluid Technologies Division, which manufactures the FSE products at issue in this case. (*Id.* ¶¶ 3, 13-14.) Mr. Sutter has knowledge regarding: (1) the Gusmer and GlasCraft acquisitions; (2) the post-acquisition integration of Gusmer and GlasCraft into Graco's business; (3) Graco's policies and practices with respect to its distributors; and (4) Graco's FSE sales and marketing. (*Id.* ¶ 14.) Mr. Sutter left Graco in 2008, but currently resides in Arden Hills, Minnesota. (*Id.*) Similarly, Bill Scherer—Graco's former Director of Engineering—is a third-party witness residing in Minnesota with knowledge of the Gusmer acquisition and Graco's post-acquisition FSE product development. (*Id.* ¶ 15.) Neither of these witnesses is within the direct subpoena power of this Court, but would be subject to subpoena in the District of Minnesota.

Finally, the vast majority of the relevant paper and electronic documents pertaining to the material events of this case are stored at Graco's Minnesota headquarters or with Graco's Minnesota counsel.

(Sheahan Decl. ¶ 16.) Graco is not aware of any documents pertaining to Plaintiff's allegations that are located in Pennsylvania.

## STATEMENT OF QUESTION INVOLVED

Should this case be transferred to the District of Minnesota under 28 U.S.C. § 1404(a) for the convenience of the parties and witnesses and in the interest of justice?

Suggested Answer: Yes.

## ARGUMENT

This action should be transferred to the District of Minnesota because Minnesota is clearly a more convenient forum and because transfer would advance the interests of justice. Section 1404(a) authorizes federal district courts "for the convenience of parties and witnesses, in the interest of justice" to "transfer any civil action to any other district or division where it might have been brought"—thereby "prevent[ing] the waste of time, energy, and money and ... protect[ing] litigants, witnesses, and the public against unnecessary inconvenience and expense." *High River Ltd. P'ship v. Mylan Labs., Inc.*, 353 F. Supp. 2d 487, 491 (M.D. Pa. 2005). The statute "place[s] discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

Under Section 1404(a), courts engage in a two part inquiry to determine if transfer is warranted. First, "the court must determine whether the action 'might have been brought' in the proposed transferee

district." *High River*, 353 F. Supp. 2d at 492. If so, the reviewing court then "'consider[s] all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum.'" *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).

This analysis involves a review of all the "private and public interests protected by the language of § 1404(a)." *Id.* It does not require Graco to establish "truly compelling circumstances" for transfer, but only that "the case would be better off transferred to another district.'" *High River*, 353 F. Supp. at 492. And in cases involving multiple defendants, a court may "transfer a case pursuant to venue transfer statutes without possessing personal jurisdiction over [all] defendants." *Cumberland Truck Equip. Co. v. Detroit Diesel Corp.*, 401 F. Supp. 2d 415, 419 (E.D. Pa. 2005).

Transfer is appropriate in this matter because it "might have been brought" in the District of Minnesota, and the balance of public and private interests under Section 1404(a) weigh strongly in favor of transfer.

## I.    This Action Might Have Been Brought in the District of Minnesota.

This issue is easily addressed because "venue, personal jurisdiction, and subject matter jurisdiction would all have been proper in the proposed transferee district." *High River*, 353 F. Supp. 2d at 493. There is no question that jurisdiction and venue would have been proper over Graco in the District of Minnesota, since Graco is headquartered there and is the alleged "hub" of an antitrust conspiracy. Jurisdiction and venue over the

10

Distributor Defendants would also be proper in the District of Minnesota, given the Distributors' significant contacts with Graco in Minnesota through distribution agreements that Plaintiff puts at issue in this case. *See Cumberland Truck*, 401 F. Supp. 2d at 425 (in case of alleged manufacturer-distributor antitrust conspiracy, venue was proper where the manufacturer was "headquartered and the averred substantial events giving rise to the alleged conspiracy [were] supposed to have taken place").

## II. The Private Interest Factors Unequivocally Favor Transfer to the District of Minnesota.

The Third Circuit has enumerated a non-exhaustive list of private interest factors to consider in weighing a motion to transfer, which include: (1) the plaintiff's choice of forum; (2) the defendant's preference; (3) where the claim arose; (4) the convenience of the parties; (5) the convenience of the witnesses, but only to the extent they may be unavailable for trial in one of the fora; and (6) the location of books and records, similarly limited to the extent that the files could not be produced in the alternative forum. *Jumara*, 55 F.3d at 879. These factors overwhelmingly support transfer.

**The parties' forum preferences favor transfer.** Given that Plaintiff resides in California and that Graco, the primary Defendant, resides in Minnesota, balancing the Plaintiff's choice of forum against the Defendant's preference strongly favors a transfer to the District of Minnesota. Although a plaintiff's choice of forum is normally entitled to deference, "less deference [is given] where the plaintiff chooses a forum

11

outside of its state of residence." *WellPet LLC v. Midwestern Pet Foods, Inc.*, 2009 U.S. Dist. LEXIS 117141, at *4 (M.D. Pa. Dec. 16, 2009).[2] A plaintiff's choice of forum is given even less weight in class actions. *See Berndt v. Deloitte & Touche LLP*, 2012 U.S. Dist. LEXIS 103422, at *9 (E.D. Pa. July 25, 2012).

The California Plaintiff here sued in a District that is thousands of miles away from its home forum. Plaintiff thus would not suffer any inconvenience from a transfer to the District of Minnesota. In fact, transfer to Minnesota would shorten the necessary travel distance for Plaintiff and its counsel (based in San Francisco, California). Minneapolis is a Delta Airlines hub, improving the availability of nonstop flights to the forum for parties and nonparties alike. (Subbaraman Decl., Ex. B).

Conversely, the usual rationale for giving less deference to a defendant's forum preference — that transfer would "shift inconvenience from one party to another" — does not apply here. *Coppola v. Ferrellgas, Inc.*, 250 F.R.D. 195, 198 (E.D. Pa. 2008). To the contrary, transfer to Minnesota would not inconvenience Plaintiff, while a trial in Pennsylvania would greatly disrupt Graco's operations by displacing Graco's corporate witnesses from their homes and offices for major periods of time. *Cf. Carson v. Flexible Foam Prods., Inc.*, 2008 U.S. Dist. LEXIS 34336, at *5 (W.D. Wis. Apr. 23, 2008) (ordering transfer to the Northern District of Ohio because,

---

[2] All unpublished opinions cited herein are attached to the Declaration of Mahesha Subbaraman.

*inter alia*, defendant's office was located there and a "nearby trial would be less disruptive of defendant's operations" whereas the "[California] plaintiffs and their representatives [would] have to travel long distances, whether the trial [was] held in Ohio or in Wisconsin").

**"Where the claim arose" favors transfer**. "When the vast majority of the acts giving rise to plaintiff's claims take place in another forum, that weighs heavily in favor of transfer." *Hamilton v. Nochimson*, 2009 U.S. Dist. LEXIS 62644, at *8 (E.D. Pa. July 21, 2009). Accordingly, venue is most appropriate in the District of Minnesota because "the decision-making regarding the alleged [misconduct] ... occurred at [Graco's] headquarters" in Minnesota. *WellPet,* 2009 U.S. Dist. LEXIS 117141, at *6 n.2. Indeed, Plaintiff alleges that Graco was a "monopolist hub" (Compl. ¶ 171), and challenges Graco's FSE acquisitions, distributorship agreements, and business decisions—all based on transactions and conduct occurring in Minnesota. *See High River*, 353 F. Supp. 2d at 498 (ordering transfer to the Southern District of New York because, *inter alia*, "the key events giving rise to Plaintiff's claims occurred in that forum," including the preparation, negotiation, and execution of key documents at defendant's offices in that forum).

**The "convenience of the parties" favors transfer**. Without a doubt, trial in Minnesota would be far less disruptive on Graco's operations than trial in Pennsylvania. Conversely, Plaintiff's representatives would have to fly from their California headquarters to the venue, regardless of whether

the venue is Minnesota or Pennsylvania. And even if Plaintiff did reside in this District, Graco's employee witnesses are bound to outnumber Plaintiff's witnesses, especially since Plaintiff played no role in the FSE transactions that Plaintiff challenges. *Cf. WellPet*, 2009 U.S. Dist. LEXIS 117141, at *6 n.2 (ordering transfer to defendant's home forum since, *inter alia*, "many of Defendant's witnesses will [likely] be employees that work in and reside near [Defendant's] Indiana [headquarters]").

On this score, the Court should give little weight to the fact that Plaintiff has happened to name a single Pennsylvania defendant in this case. (*See* Compl. ¶ 27.) This is because Plaintiff ultimately alleges that Graco engaged in a *nationwide* antitrust conspiracy. (*See id.* ¶¶ 15-19.) Plaintiff has thus named distributors in twenty states as defendants. One lone alleged FSE distributor in Pennsylvania is therefore insufficient to make this District a proper or more convenient venue.

**The "convenience of the witnesses" favors transfer**. "The convenience of the witnesses is the most important factor in venue transfer analysis." *Nilssen v. Everbrite, Inc.*, 2001 U.S. Dist. LEXIS 25568, at *6 (D. Del. Feb. 16, 2001). For many of the reasons already expressed, transfer to Minnesota would serve the convenience of the relevant Graco employee witnesses who work and reside in Minnesota and were involved in the events that inform Plaintiff's allegations. By contrast, Plaintiff's witnesses presumably work and reside in California, and would have to travel a significant distance whether the case is venued in Pennsylvania or

14

Minnesota. Thus, on balance, transfer to the District of Minnesota would considerably reduce the travel time and inconvenience for a substantial number of Graco employee witnesses without requiring additional travel for other parties' witnesses. *Cf. Meritain Health, Inc., v. Express Scripts, Inc.*, 2012 U.S. Dist. LEXIS 17682, at *8-9 (E.D. Pa. Feb. 13, 2012) (ordering transfer to the Eastern District of Missouri because, *inter alia*, "to the extent the plaintiffs argue that witnesses would come from all over the country, Missouri is a more central location than Pennsylvania.").

Graco has also identified key, non-party witnesses who reside in Minnesota. The convenience of non-party witnesses remains a paramount factor to consider in weighing witness convenience because such witnesses will often be unwilling or unable to testify absent a subpoena. *See Ellis v. Marriott Int'l, Inc.*, 2011 U.S. Dist. LEXIS 145417, at *9 (M.D. Pa. Dec. 19, 2011) (ordering transfer to District of Hawaii where, *inter alia*, "[t]he witnesses in the present case are located over one hundred (100) miles from ... the Middle District of Pennsylvania").

Accordingly, as described in the Declaration of Mark Sheahan, vital non-party witnesses reside in the District of Minnesota, including former employees Fred Sutter and Bill Scherer. (Sheahan Decl. ¶¶ 13-15.) Given that these witnesses are outside Graco's control, they may be less willing to travel to the Middle District of Pennsylvania to testify than they would to Minneapolis or St. Paul. Hence, as these material, non-party witnesses are outside this Court's subpoena power, the convenience of these witnesses

15

heavily favors transfer to Minnesota. *See Ellis v. Marriott Int'l, Inc.*, 2011 U.S. Dist. LEXIS 145417, at *9; *High River*, 353 F. Supp. 2d at 498.

**The "location of books and records" favors transfer**. This Court has observed that "access to sources of proof would be more convenient" in a transferee district where "many of the relevant documents were prepared." *High River*, 353 F. Supp. 2d at 498. Transfer is additionally favored under this factor when "none of the parties indicate that any of the relevant documents are located in the Middle District of Pennsylvania." *Id.* As such, the Court should find that "the costs associated with producing documents in discovery and at trial would be less" in the District of Minnesota "than in the Middle District of Pennsylvania." *Id.* Indeed, all the documents most relevant to this action — especially documents related to Graco's FSE acquisitions and relationships with its distributors — were prepared and are currently located in Minneapolis. Finally, Graco is not aware of any relevant documents being present in the Middle District of Pennsylvania — and nothing in the Complaint indicates such documents exist.

III.    **The Public Interest Factors Unequivocally Favor Transfer to the District of Minnesota.**

The Third Circuit also provides a non-exhaustive list of public interests that a court should consider in weighing transfer under Section 1404(a): (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4)

the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases. *Jumara*, 55 F.3d at 879-80. Once again, these factors heavily favor transfer to the District of Minnesota.

**The "enforceability of a judgment" favors transfer.** While only a theoretical matter at this time, this factor still favors transfer since Graco—the main Defendant in this case—is more easily subject to judgment in Minnesota, where Graco's assets are located, than in Pennsylvania, where Graco has no assets. (Sheahan Decl. ¶ 4.); *see In re Toll Processing Servs.*, 2012 U.S. Dist. LEXIS 177945, at *10 (W.D. Pa. Dec. 17, 2012) ("Since Defendant's assets are located in the Northern District of Illinois, less would be required of the Illinois courts to execute a judgment against Defendant than would be required of courts in Pennsylvania.").

**"Practical considerations that could make the trial easy, expeditious, or inexpensive" favor transfer**. The most immediate practical consideration supporting transfer to the District of Minnesota is that personal jurisdiction and venue appear to be lacking in this District over most of the defendants in this case. With the exception of one defendant, Plaintiff does not allege that any of the Distributor Defendants conducted business in Pennsylvania or otherwise "purposefully availed" themselves of doing business with Pennsylvania citizens, as would be necessary to support the exercise of personal jurisdiction over them. *See J. McIntrye*

17

*Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2790-91 (2011).[3] Nor does Plaintiff allege that any of these distributors either "inhabit," or may be "found" in, or "transact business" within the Middle District of Pennsylvania, as is required under the Clayton Act's venue provision. 15 U.S.C. § 22; *see also In re Auto. Refinishing Paint Antitrust Litig.*, 358 F.3d 288, 293 n.6 (3d Cir. 2004) (defining the requirements of the Clayton Act's venue provision).

Under similar circumstances, the Eastern District of Pennsylvania found in *Cumberland Truck*—a case involving an alleged price-fixing and group boycott conspiracy between a truck engine manufacturer and its distributors—that venue could not be exercised over distributors that had no presence or contacts with the District. *See* 401 F. Supp. 2d 415, 426 (E.D. Pa. 2005). The court thus transferred the entire action to the manufacturer's home district. *Id.* ("As DDC maintains headquarters in Detroit, Michigan, and the moving Defendants transacted business with DDC while acting as DDC's distributors, proper venue lies in the Eastern District of Michigan."); *see also Howard Hess Dental Labs, Inc. v. Dentsply Int'l, Inc.*, 516 F. Supp. 2d 324, 336-40 (D. Del. 2007) (in alleged antitrust conspiracy between

---

[3] Plaintiff cannot invoke any "conspiracy theory" of personal jurisdiction because it does not allege that any "substantial acts in furtherance of the conspiracy" occurred in this District or that each of the nonresident distributors was or should have been aware of those acts. *In re Auto. Refinishing Paint Antitrust Litig.*, 2002 U.S. Dist. LEXIS 15099, at *39 (E.D. Pa. July 31, 2002) ("[M]erely belonging to a civil conspiracy does not make a member subject to the jurisdiction over every other member's forum. "), *aff'd*, 358 F.3d 288 (3d Cir. 2004).

manufacturer and its dealers, non-Delaware dealers had to be dismissed for lack of personal jurisdiction and venue).

Accordingly, *Cumberland Truck* suggests that this action should be transferred to the District of Minnesota to avoid the glaring jurisdictional and venue deficiencies now present in this case with respect to most of the named Defendants. And even if these nonresident distributors were dropped from the case, practicality considerations would still favor transfer to Minnesota where "most of the witnesses and records pertaining to this matter are located," making it "clear that it will likely be less expensive and more efficient for the case to proceed within the State of Minnesota." *See Days Inn Worldwide, Inc. v. Inv. Props. of Brooklyn Ctr.*, 2009 U.S. Dist. LEXIS 88710, at *11-12 (D.N.J. Sept. 25, 2009).

**"The relative court congestion in the competing courts" favors transfer**. "The accepted measure of court congestion is the median time from filing to disposition of civil cases in a district." *Hamilton*, 2009 U.S. Dist. LEXIS 62644, at *11-12 n.1. According to the December 2012 Federal Court Management Statistics, the District of Minnesota is less congested than the Middle District of Pennsylvania, with Minnesota having a 5.4-month filing-to-disposition median time, compared to a 7.7-month median time in this District. (Subbaraman Decl., Ex. C); *see Ebid v. Global Futures & Forex, Ltd.*, 2010 U.S. Dist. LEXIS 123596, at *16 & n.5 (D. N. J. Nov. 22, 2010) (where filing-to-disposition median time in transferee district was faster by

0.7 months, this "lesser relative congestion … slight though it may be, somewhat favors transfer of venue").

**"Public policies of the fora" favor transfer.** Under this factor, "the Court must consider the public policies of the proposed forum." *Johnson v. Nextel Commc'ns, Inc.*, 2007 U.S. Dist. LEXIS 70926, at *14 (D.N.J. Sept. 21, 2007). The Complaint here invokes the public policies of Minnesota, not Pennsylvania. It complains about conduct and material events that occurred in Minnesota. It further asserts state-law antitrust and unfair-competition claims under Minnesota law (among other jurisdictions) but no claims under Pennsylvania law. (*See* Compl. ¶¶ 245-267, 272-83.) Indeed, "Pennsylvania has no general antitrust statute," and "has no statute that creates a private right of action against restraints of trade or monopolization." ABA SECTION OF ANTITRUST LAW, *State Antitrust Practice & Statutes* §§ 41-1, 41-17 (3d ed. 2004). And as a non-consumer, Plaintiff also would lack standing to sue under Pennsylvania's Unfair Trade Practices and Consumer Protection Law. *See Baldston v. Medtronic Sofamor Danek, Inc.*, 152 F. Supp. 2d 772, 779 (E.D. Pa. 2001).

Another relevant "public policy is the burden on the jury," which "should not be imposed upon the people of a community that has no relation to the litigation." *Johnson*, 2007 U.S. Dist. LEXIS 70926, at *14-15. Minnesota is closely related to this litigation: Graco is a Minnesota corporation whose conduct constitutes the alleged "hub" of the antitrust

conspiracy claims in this case; by contrast, Pennsylvania has virtually no relationship to this case at all. This factor favors transfer.

**"The local interest in deciding local controversies at home" favors transfer.** "Since plaintiff is not a resident of Pennsylvania, [the Court must] look to where the majority of events took place in determining which district has a greater local interest." *Hamilton*, 2009 U.S. Dist. LEXIS 62644, at *10. As detailed above, the majority of alleged events related to Plaintiff's antitrust claims—from Graco's FSE acquisitions to Graco's agreements with its FSE distributors to Graco's FSE business decisions—all took place or emanated from Graco's Minnesota headquarters. This factor thus unequivocally favors transfer to the District of Minnesota.

**"The familiarity of the trial judge with the applicable state law" favors transfer**. As discussed above, while the Complaint does not invoke any relevant Pennsylvania state law, Plaintiff asserts an antitrust claim under Minnesota law (Compl. ¶ 253), and Graco's agreements with its distributors are governed by Minnesota law. Accordingly, these facts favor transfer to the District of Minnesota. *See Meyers v. Heffernan*, 2012 U.S. Dist. LEXIS 56033, at *31-32 (D. Del. Mar. 29, 2012) ("Relied on in the Complaint are two New Jersey statutes .... The District of New Jersey would likely be more familiar with New Jersey law than this court. This factor weighs in favor of transfer.").

## CONCLUSION

For the foregoing reasons, Graco respectfully asks this Court to grant its motion to transfer venue to the District of Minnesota.


Dated: July 19, 2013          **OBERMAYER REBMANN MAXWELL & HIPPEL LLP**

By: _____ *s/ Walter W. Cohen* _____

Walter W. Cohen (PA 12097)
Kevin J. Kehner (PA 33539)

200 Locust Street — Suite 400
Harrisburg, PA 17101–1508

T: 717–234–9730
F: 717–234–9734

walter.cohen@obermayer.com

**ROBINS, KAPLAN, MILLER & CIRESI, LLP**

Anne M. Lockner (*pro hac vice* MN 295516)
Stephen P. Safranski (*pro hac vice* MN 331326)
Kellie Lerner (*pro hac vice* NY 4446472)
George D. Carroll (*pro hac vice* MN 350436)
Mahesha P. Subbaraman (*pro hac vice* MN 392486)

2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402–2015

T: 612–349–8500
F: 612–339–4181

spsafranski@rkmc.com

*Attorneys for Defendants Graco Inc. and*
*Graco Minnesota Inc.*

22

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| INSULATE SB, INC., a California Corp., individually and on behalf of all others similarly situated, | Case No. 1:13–cv–01609–YK |
| | (Chief Judge Yvette Kane) |
| *Plaintiff,* | **ORAL ARGUMENT REQUESTED** |
| v. | |
| ABRASIVE PRODUCTS & EQUIPMENT, *et al.* | Filed Electronically |
| *Defendants.* | |

### Certificate of Compliance Pursuant to Local Rule 7.8(b)(2) in Support of Graco Inc. and Graco Minnesota Inc.'s Motion Under 28 U.S.C. § 1404(a) to Transfer Venue to the Federal District of Minnesota

The undersigned Counsel certifies that this Memorandum of Law in Support of Graco's Motion Under 28 U.S.C. § 1404(a)  to Transfer Venue to the Federal District of Minnesota complies with word limits of Local Rule 7.8(b)(2). According to the word-count feature of the word-processing system used to prepare this brief, this Brief contains <u>4,998 words</u>.

Dated: July 19, 2013    **ROBINS, KAPLAN, MILLER & CIRESI LLP**

By:   *s/ Mahesha Subbaraman*
　　Mahesha Subbaraman  (*pro hac vice* MN 392486)

*Attorneys for Graco Defendants Graco Inc. and Graco Minnesota Inc.*

23