IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| INSULATE SB, INC., | : | |
|     Plaintiff | : | No. 1:13-cv-1609 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| ABRASIVE PRODUCTS & | : | |
| EQUIPMENT, et al., | : | |
|     Defendants | : | |

## MEMORANDUM

Presently pending before the Court is Defendant Graco's motion to transfer the above-captioned action to the District of Minnesota. (Doc. No. 67.) For the reasons that follow, the Court will grant Defendant's motion.

## I.   BACKGROUND

On June 14, 2013, Plaintiff Insulate SB, Inc., filed a class action complaint on behalf of itself and all others similarly situated against Defendants Graco, Inc., and Graco Minnesota, Inc., along with a number of distributors of Graco's fast-set spray foam equipment[1], alleging violations of, inter alia, Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, as well as Sections 3, 4, 7, and 16 of the Clayton Act, 15 U.S.C. §§ 14, 15, 18, 26. (Doc. No. 1.) In its complaint, Plaintiff, a fast-set contractor, alleges the existence of a "hub-and-spoke" conspiracy whereby Graco conspires with distributors to deny its competitors access to the fast-set equipment distribution network and the distributors conspire with one another to deal

---

[1] According to Plaintiff's complaint, fast-set equipment, also referred to as FSE, is used primarily by contractors for the installation of foam insulation in residential and commercial buildings, and to apply polyurea coatings to protect structures such as bridges, holding tanks, pipelines, and marine hulls. (Doc. No. 1 ¶ 4.)

exclusively with Graco.  (Id. ¶ 171.)  Moreover, Plaintiff alleges that Graco conspired with each of the distributors to vertically fix the price of fast-set equipment.  (Id.)  Plaintiff substantiates its claims by referring to an April 2013 complaint filed by the Federal Trade Commission, alleging that Graco violated the antitrust laws of the United States by buying its two closest competitors, and by raising barriers to entry for firms seeking to compete with it by taking steps to ensure that its distributors would only distribute Graco's products.  (Id. ¶ 6.)

Shortly after filing its complaint, on June 19, 2013, Plaintiff moved the Court to enter a preliminary injunction against Defendants enjoining them from their allegedly anticompetitive activities, and also moved the Court to set an expedited discovery schedule.  (Doc. Nos. 10, 12.)  The Court stayed Plaintiff's motion for preliminary injunction, pending the resolution of the request for expedited discovery.  (Doc. No. 29.)  On July 19, 2013, Defendant Graco moved the Court to transfer venue to the District of Minnesota. (Doc. Nos. 12, 67.)

## II.  LEGAL STANDARD

Pursuant to Section 1404(a), a district court may transfer any civil action to another district court where the action might have been filed, "[f]or the convenience of the parties and witnesses, in the interest of justice."  28 U.S.C. § 1404(a).  Transfers under Section 1404(a) are "discretionary determinations made for the convenience of the parties and presuppose that the court has jurisdiction and that the case has been brought in the correct forum."  Lafferty v. St. Riel, 495 F.3d 72, 76 (3d Cir. 2007).  The moving party must first show that venue is proper in the transferee forum.  Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995).  Next, the moving party bears the burden of showing the need for transfer and must demonstrate that "on balance the litigation would more conveniently proceed and the interests of justice be better

served by transfer to a different forum." Id.

The United States Court of Appeals for the Third Circuit, noting that district courts should not "limit[] their consideration to the three enumerated factors in § 1404(a)," has outlined private and public factors for courts to consider when determining whether to transfer an action. Id. The relevant private factors include: (1) each party's forum preference; (2) where the claims arose; (3) the convenience of the parties as indicated by their relative physical and financial conditions; (4) the convenience of the witnesses; and (5) the location of books and records. Id. Relevant public factors include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases. Id.

### III.    DISCUSSION

In support of its motion, Defendant Graco argues that the Court should transfer venue to the District of Minnesota because the majority of the material events comprising Plaintiff's complaint took place within Minnesota, and most of the witnesses and documents are located there. (Doc. No. 69 at 14.) In response, Plaintiff argues that because Graco is a powerful corporation, and engaged in a nationwide conspiracy with nationwide effects, Minnesota is no more appropriate a venue than Pennsylvania. (Doc. No. 131 at 8-10.)

#### A.    Venue is proper in Minnesota

As an initial matter, the Court finds that venue is proper in the District of Minnesota. Venue is proper in "a judicial district in which a substantial part of the events or omissions

3

giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). Defendant Graco is a Minnesota Corporation with its principal place of business in Minneapolis, Minnesota, and the complaint alleges a "hub-and-spoke" conspiracy with Graco as the "monopolist hub." (Doc. No. 1 ¶¶ 171.) Therefore, a substantial part of the events alleged in the complaint arose in Minnesota. Further, given the fact that the distributor defendants are alleged to have conspired with Graco and entered into distribution agreements with Graco, each of the defendants has significant contacts with Minnesota. (Id., Doc. No. 69 at 10-11.) Thus, given that venue is proper in the District of Minnesota, the Court must now examine private and public interest factors to determine whether the action should be transferred.

### B. Private Factors

#### 1. Choice of forum

First, the Court must consider the forum preference of each party. As a general rule, when assessing a motion to transfer venue, "the plaintiff's choice of venue should not be lightly disturbed." Jumara, 55 F.3d at 879. However, the deference owed plaintiff's chosen forum may be undermined by the particular circumstances of the individual cases. For example, "when the central facts of a lawsuit occur outside of the chosen forum, plaintiff's choice of forum is accorded less weight." Nat'l Prop. Investors VIII v. Shell Oil Co., 917 F.Supp. 324, 327 (D.N.J. 1995). This may also be true when the plaintiff selects to litigate in a foreign forum. Wm. H. McGee & Co., Inc. V. United Arab Shipping Co., 6 F.Supp.2d 283, 290 (D.N.J. 1997). Moreover, courts are less deferential to a Plaintiff's choice of forum when the lawsuit is filed as

4

a class action.[2]  See Yang v. Odom, 409 F.Supp.2d 599, 606 (D.N.J. 2006) (citing Job Haines Home for the Aged v. Young, 936 F.Supp. 223, 228 (D.N.J. 1996)) ("[T]he plaintiff's choice of a forum becomes substantially less important . . . when he sues representatively on behalf of a class").

Here, all three considerations apply in the present case, such that Plaintiff's choice of forum is entitled to significantly less weight.  Plaintiff's primary allegation is that Graco operated as a monopolist hub.  Because Graco's headquarters are in Minnesota, this suggests the "central facts" of the case occurred in Minnesota.  Although Plaintiff alleges that a nationwide conspiracy existed, the only fact in the complaint linking this case to the Middle District of Pennsylvania is that one of the thirty-two distributor defendants is a Pennsylvania corporation. (Doc. No. 1 ¶ 27.)  Additionally, less deference is proper because Plaintiff is not a resident of Pennsylvania and the lawsuit is styled as a class action.

In contrast, Defendant Graco prefers to litigate this action in the District of Minnesota, where its primary place of business is located.[3]  A defendant's preference is usually "entitled to considerably less weight than Plaintiff's, as the purpose of a venue transfer is not to shift inconvenience from one party to another."  EVCO Tech. & Dev. Co. v. Precision Shooting

---

[2] Plaintiff cites Expoconsul, Int'l, Inc v. A/E Systems, Inc., 711 F.Supp. 730, 735 (S.D.N.Y. 1989), for the proposition its forum choice is entitled to greater deference because this suit relates to antitrust violations.  The Court is not persuaded by the cited case, which is an individual rather than a class action, and an action from outside the Third Circuit.  Other courts in this circuit, applying the law of the Third Circuit, which controls here, afford less weight to the forum choices of class action plaintiffs.  See, e.g., Catanese v. Unilever, 774 F.Supp.2d 684, 689 (D.N.J. 2011); Donnelly v. Klosters Rederi A/S, 515 F.Supp. 5, 6-7 (E.D. Pa. 1981).

[3] Fourteen other Defendants joined in Defendant Graco's motion. (Doc. No. 136.) Notably, none of the thirty-two non-Graco defendants have opposed the transfer, including the sole Pennsylvania-based Defendant.

Equip., Inc., 379 F.Supp.2d 728, 730 (E.D. Pa. 2003). However, Plaintiff is a California corporation, and fails to show the Court why transferring this case to Minnesota from Pennsylvania would effectively shift any inconvenience to Plaintiff. As a resident of California, Plaintiff has pointed to no factors that suggest that travel to Pennsylvania would be more convenient than travel to Minnesota. See Yang, 409 F.Supp.2d at 607 (noting, while ordering transfer, that the transferee forum was no more geographically convenient for Plaintiffs than the transferor forum "considering the lead plaintiffs are [residents of neither forum], and the potential class members are apparently located across the country").

### 2.     Where the claims arose

The Court next considers where the claims arose. "Typically, the most appropriate venue is governed by this factor: where a majority of events giving rise to the claim arose." Coppola v. Ferrellgas, Inc., 250 F.R.D. 195, 198 (E.D. Pa. 2008). The alleged transactions and conspiratorial conduct occurred largely in Minnesota, where it is asserted that the contracts between Graco and its alleged co-conspirator distributors were negotiated and executed. (Doc. No. 1 ¶ 171, Doc. No. 69 at 6.) In addition to the overarching hub-and-spoke conspiracy, Plaintiff also alleges that each of these agreements constituted an independent conspiracy. (Doc. No. 1 ¶ 171.) Thus, Minnesota is where most of the conspiratorial conduct took place and this factor weighs in favor of transfer.

Plaintiff argues that, as this is a "national" conspiracy, it arose in no one single location[4] and therefore this factor should not favor transfer to Minnesota. (Doc. No. 131 at 9-10.) But

---

[4] Plaintiff also avers that to the extent this cause of action can be said to arise anywhere, New Jersey is also "an epicenter of wrongful conduct." (Doc. No. 131 at 9.) Plaintiff does not, however, suggest that Pennsylvania, its preferred forum, is such an epicenter.

6

the facts suggest that Minnesota-based Graco controlled and orchestrated this alleged conspiracy, which Plaintiff itself refers to as a "monopolist hub."  Moreover, the Court is empowered to determine which forum has the more significant connection to the controversy in determining whether a transfer is proper.  See Van Cauwenberghe v. Biard, 486 U.S. 517, 528 (1988) ("[T]he court must consider the locus of the alleged culpable conduct, often a disputed issue, and the connection of that conduct to the plaintiff's chosen forum."); Park Inn Int'l., L.L.C., v. Mody Enterprises, Inc., 105 F.Supp.2d 370, 371 (D.N.J. 2000) (noting that in considering a motion to transfer where there is no single forum in which all events related to the claim arose, the relevant question to ask is which forum contains the "center of gravity" of the dispute).  The Court finds that Minnesota is clearly the "center of gravity" of this controversy, and therefore this factor heavily favors transfer.

### 3. Convenience of the parties

Next, the Court must consider the convenience of the parties "as indicated by their relative physical and financial condition."  Jumara, 55 F.3d at 879.  This factor weighs in favor of transfer.  Plaintiff is a California corporation.  (Id. ¶ 20.)  Thus, litigating in Minnesota rather than Pennsylvania would not actually inconvenience Plaintiff, who has chosen to bring suit in neither its home state nor in a geographically convenient forum.

By contrast, Defendant Graco's principal place of business is in Minnesota, and three of the additional defendants are located there.  The remaining defendants are spread throughout the nation.  (Doc. No. 1 ¶¶ 21-52.)  Although Plaintiff, who is based in California, would not be greatly inconvenienced by the transfer to Minnesota, transfer would significantly increase convenience for many Defendants, primarily Graco, and the three other defendants located in

Minnesota. It is far less disruptive to Graco's business to allow them to litigate in Minnesota rather than to force them to do so in Pennsylvania. In addition, Minnesota is a more centralized location in the United States. These facts all favor transfer. See Yang, 409 F.Supp.2d at 608 (D.N.J. 2006) (ordering transfer where "it appear[ed] to this Court that it would be less expensive for all involved to adjudicate this case in a forum that is geographically the most convenient to a majority of the participants in the case").

Plaintiff asserts that because Graco is a multi-billion dollar company with operations all over the world, and can afford to litigate this action in the Middle District of Pennsylvania, its convenience should not be a factor. The Court cannot agree. Although Graco's resources may be greater, Plaintiff has not shown that moving the action to Minnesota would cause it unreasonable burden. Indeed, it is not clear why litigation in Minnesota would create any particular financial or geographic hardship to the Plaintiff beyond that which already exists by virtue of its choice to bring suit in Pennsylvania. In light of this, the Court declines to ignore the obvious convenience to the Minnesota-based defendants, particularly when no defendants, including the sole Pennsylvania-based party, has objected to transfer.

### 4. Convenience of the witnesses

The Court next considers the convenience of the witnesses. The Court may consider the convenience of witnesses "only to the extent that the witnesses may actually be unavailable for trial in one of the fora." Jumara, 55 F.3d at 879. Federal Rule of Civil Procedure 45(c)(3)(A)(ii) provides that a court must quash a subpoena requiring a non-party witness to travel more than 100 miles from where that person lives, works, or regularly transacts business in person. Defendant Graco has specifically identified two non-party witnesses located within Minnesota

who would be outside of the Middle District of Pennsylvania's subpoena power.  (Doc. No. 69 at 15.)  Plaintiff has alleged one non-party witness who is subject to subpoena power in this District.  (Doc. No. 131 at 12.)  Plaintiff further describes two additional non-party witnesses in New Jersey, but does not suggest that either would be subject to process in Pennsylvania; rather, Plaintiff merely asserts that they "may be less willing to travel to Minneapolis." (Id. at 13-14.)  Even if that is true, the Court does not take "willingness" into account.  See Jumara at 879.

Graco also alleges, more generally, that other necessary non-party witnesses live in Minnesota.  (Doc. No. 69 at 15.)  In response, Plaintiff points out that C.H. Reed, the single Pennsylvania defendant, sold products in Pennsylvania, which indicates there are also other unidentified potential witnesses subject only to Pennsylvania process.  (Doc. No. 131 at 11.)  But given that only one defendant distributor is located in Pennsylvania, it is reasonable to believe there are more potential non-party witnesses in Minnesota, where three distributors and Graco are located, than in Pennsylvania.  Thus, this factor also favors transfer.

### 5. Location of books and records

The location of "books and records" slightly favors transfer to the District of Minnesota. There is no representation that any relevant books or records are within the Middle District of Pennsylvania.  Plaintiff instead alleges that certain important documents are located in New Jersey, and it would be easier to transport them to Pennsylvania rather than to Minnesota.  (Doc. No. 131 at 14-15.)

Courts have recognized that "[w]hen documents can be transported and/or easily photocopied, their location is entitled to little weight." Clark v. Burger King Corp., 255 F.Supp.2d 334, 339 (D.N.J. 2003).  This is even more true, and this fifth factor is therefore of

minimal value, in an electronic age where massive volumes of materials can be searched and compiled electronically and exchanged with relative ease. Courts have noticed this trend. See, e.g., Smith v. HireRight Solutions, Inc., No. 09-6007, 2010 WL 2270541 at *8 (E.D.Pa. June 7, 2010). Thus, this factor is limited to the extent that the files could not be produced in the alternative forum. Jumara at 879. Although both parties allege the location of evidence closer to their forums, neither party appears to suggest that books and records could not be produced or transferred to the other forum. Accordingly, the Court does not place much weight in this factor.

      B.      **Public Factors**

Having evaluated the relevant private factors, and finding them in favor of transfer, the Court proceeds to the public factors: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases. Jumara, 55 F.3d at 879. Because the facts of the controversy are more closely tied to Minnesota than Pennsylvania, the public factors also favor transfer to the District of Minnesota.

The first factor, enforceability of the judgment, is neutral. Defendants argue that it may be slightly more difficult to enforce a judgment in Pennsylvania than in Minnesota, given the location of Graco and its assets, but there is no reason offered from which the Court can conclude that there are any real impediments to enforcement in Pennsylvania. See Jumara at 882 (noting that there was no "likelihood of an enforcement problem"); see also In re Buffets Holdings, Inc., 397 B.R. 725, 729 (Bankr. D. Del. 2008) (applying no weight to this factor where

the Court "has no reason to believe that a judgment rendered in either jurisdiction would not be given full faith and credit").

A second factor, the relative administrative difficulty in the two fora resulting from court congestion, slightly favors transfer. According to the March 2013 Federal Court Management Statistics, the District of Minnesota is currently less congested than the Middle District of Pennsylvania, with a 2.3 month faster filing-to-disposition time in civil cases. Courts in this Circuit, however, rarely apply much weight to this factor. See, e.g., Park Inn Int'l., 105 F.Supp.2d at 378 (noting that "the relatively more crowded docket in this Court does not add substantially to the defendants' argument"); Clark, 255 F.Supp.2d at 339 ("[A]lthough courts may consider calendar congestion in ruling upon a 1404(a) motion, relative congestion of the respective courts' dockets is not a factor of great importance in this type of motion.").

Third, practical considerations that could make the trial easy, expeditious, or inexpensive strongly favor transfer to the District of Minnesota. See Jumara at 879. The Court finds, without deciding the issue, that there are legitimate questions and concerns raised about whether Pennsylvania will be able to exercise personal jurisdiction over many of the defendants.[5] In contrast, Defendants concede that jurisdiction exists in Minnesota over the thirty-two distributor

---

[5] Both Plaintiff and Defendants devote much of their respective briefs to the issue of whether Pennsylvania will be able to properly exercise jurisdiction over a majority of Defendants in this case. That question is more appropriately dealt with in a motion to dismiss, with more complete briefings and examination on the issue. Moreover, even if this Court found jurisdiction was proper in Pennsylvania, on balance, the public and private factors analyzed herein would still support transfer to Minnesota, and disposition of the jurisdiction question is not a prerequisite to an order transferring venue. See Schwilm v. Holbrook, 661 F.2d 12, 13 (3d Cir. 1981) ("Because we conclude that [transferee forum] is the more appropriate forum for this action, we do not decide whether personal jurisdiction could properly have been asserted in Pennsylvania."); United States v. Berkowitz, 328 F.2d 358, 361 (3d Cir. 1964).

defendants in Minnesota, because each has business contacts within that forum. (Doc. No. 69 at 10-11.) Further, Plaintiff does not allege, in its opposition to this transfer, that jurisdiction would not be found over all defendants in Minnesota. This heavily favors transfer. "If the lack of <u>in personam</u> jurisdiction is in doubt, sound judicial administration requires transfer to a district where it clearly could have been brought." <u>Societe Nouvelle Generale de Promotion v. Kool Stop Intern., Inc.</u>, 633 F.Supp. 153, 155 (E.D. Pa. 1985) (citing <u>Schwilm v. Holbrook</u>, 661 F.2d 12 (3d Cir. 1981)). Further, even if this Court found that personal jurisdiction did exist as to all Defendants in Pennsylvania, there are additional practical considerations, already addressed, that strongly compel transfer: most of the records pertaining to Graco are located there, Minnesota is home to more parties than Pennsylvania, and it has a more central location in the country.

Fourth, the local interest in deciding local controversies at home favors transfer. Although Plaintiff alleges that Defendants' actions impact the nationwide market for fast-set equipment, the District of Minnesota has a stronger interest in resolving this case as the complaint sets out allegations of a "monopolist hub" located in Minnesota. Moreover, although the thirty-two additional defendants transact business in Minnesota, Plaintiff does not specifically allege that those defendants transact business in Pennsylvania. <u>See</u> <u>Gulf Oil Corp. v. Gilbert</u>, 330 U.S. 501, 509 (1947) ("There is a local interest in having localized controversies decided at home."). <u>See also</u> <u>Coppola</u>, 250 F.R.D. at 201 ("Typically, when a substantial amount of the alleged culpable conduct occurred in the chosen forum, that court favors retaining jurisdiction as a matter of local interest."). Further, this complaint contains state law claims pursuant to Minnesota law, and Graco's agreements with its distributors are governed by Minnesota law. (Doc. No. 69 at 6.). Thus, despite the nationwide scope of Plaintiff's claims,

12

Minnesota has significantly more interest in this case than does Pennsylvania. For these same reasons, the fifth private factor, public policies of the two fora, also favors transfer.

Finally, as stated above, Plaintiff's complaint sets forth claims arising under a number of state laws, including Minnesota; notably, however, the complaint does not set forth any claims under Pennsylvania law. Therefore, the familiarity of the trial judge with applicable state law also favors transfer to the District of Minnesota. See id. at 201-202 ("[J]ustice requires that, whenever possible, a diversity case should be decided by the court most familiar with the applicable state law."); Connors v. R & S Parts & Services, Inc., 248 F.Supp.2d 394, 396 (E.D. Pa. 2003).

On balance, the majority of these public factors favor transfer to the District of Minnesota, and Plaintiff has not persuaded the court that it will be prejudiced if this action is transferred. See Bolton v. Tesoro Petroleum Corp., 549 F.Supp. 1312, 1316 (E.D. Pa. 1982).

## IV. CONCLUSION

Having considered the public and private factors the Third Circuit identified in Jumara, the Court finds that the above-captioned action should be transferred to the United States District Court for the District of Minnesota. An order consistent with this memorandum follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **INSULATE SB, INC.,** | : | |
|     **Plaintiff** | : | No. 1:13-cv-1609 |
| | : | |
|     v. | : | (Judge Kane) |
| | : | |
| **ABRASIVE PRODUCTS &** | : | |
| **EQUIPMENT, et al.,** | : | |
|     **Defendants** | : | |

## ORDER

**ACCORDINGLY**, on this 27th day of September 2013, **IT IS HEREBY ORDERED THAT** Defendant's motion to transfer venue (Doc. No. 67.) is **GRANTED**, and the above-captioned action is **TRANSFERRED** to the United States District Court for the District of Minnesota for further proceedings. The Clerk of Court is directed to close the case.

                                                                                    S/ Yvette Kane
                                                                                   Yvette Kane, Judge
                                                                                   United States District Court
                                                                                   Middle District of Pennsylvania